WILKINSON, Chief Judge,
concurring in part and concurring in the judgment:
I am pleased to concur in the majority’s opinion except as to Part IV.B.2. The district court correctly found that the fire department’s interests in maintaining order and discipline outweighed Goldstein’s speech interests under the second step of the Pickering balance. Goldstein went to great lengths to disrupt the department by launching a blizzard of complaints immediately upon losing an election for the department’s captaincy. The district court properly recognized that Goldstein’s behavior was highly detrimental to Chestnut Ridge’s ability to perform its essential function of ensuring public safety. I would therefore not reject the district court’s analysis on this point. Rather, I would affirm the judgment without reservation.
Police and fire departments cannot effectively protect public safety without some measure of order and discipline in their ranks. “When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer’s judgment is appropriate.” Connick v. Myers, 461 U.S. 138, 151-52, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The district court found that Chestnut Ridge’s interests in maintaining an orderly arid safe working environment outweighed Goldstein’s speech interests.
A number of facts support the district court’s conclusion on this point. To begin with, the sheer volume and frequency of Goldstein’s complaints give them a scatter-shot quality. Goldstein submitted letters detailing numerous grievances to President Yaffee or the Executive Committee on at least nine occasions over a period of less than three months. Moreover, this barrage of complaints came fast on the heels of Goldstein’s loss of the election for the department’s captaincy in December 1995. Further, as the majority recognizes, a number of Goldstein’s concerns related only marginally or not at all to safety. For example, in his January 4, 1996, letter to Yaffee, Goldstein complained about last-minute changes to meeting times and the *360 potential formation of “cliques” at the station, in addition to raising safety issues. In his January 11, 1996, letter to Yaffee, Goldstein complained about having been denied access to the “Engineers room” during his prior tenure as first lieutenant. Indeed, Goldstein’s letters were rife with accusations of favoritism on the part of the newly elected captain. This sort of sniping reinforces the conclusion that Goldstein’s speech was directed toward disrupting the company and was motivated in part by personal vendetta.
Contrary to the concerns expressed by the majority, the district court’s approach does not permit state actors to immunize themselves from the First Amendment with reflexive appeals to “camaraderie.” Rather, the district court undertook a particularized examination of the facts of this case, as Connick/Pickering requires. See, e.g., Connick, 461 U.S. at 142, 150, 154, 103 S.Ct. 1684; Pickering v. Board of Educ., 391 U.S. 563, 568, 569, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The district court considered the manner in which Goldstein raised his complaints, as well as testimony concerning the disruptive effect of Gold-stein’s behavior on the fire department. While acknowledging the great importance of Goldstein’s interest in speaking on matters of safety, the district court concluded that, under these particular circumstances, the employer’s interests were paramount. Unlike the majority, I would endorse the district court’s conclusion on this point.